UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PENNY LAWYER,

        Plaintiff,

v

WINGS FINANCIAL CREDIT UNION,

        Defendant.

Case No. 11-12882
Hon. Arthur J. Tarnow

---

| ADAM G. TAUB & ASSOCIATES CONSUMER LAW GROUP, PLC | STARR, BUTLER, ALEXOPOULOS & STONER, PLLC |
|---|---|
| Adam G. Taub (P48703) | Joseph A. Starr (P47253) |
| Attorneys for Plaintiff | Neil B. Pioch (P67677) |
| 18930 W. Ten Mile Rd., Suite 2500 | Attorneys for Defendant |
| Southfield, MI 48075 | 20700 Civic Center Drive, Suite 290 |
| (248) 746-3790 | Southfield, MI 48076 |
| adamgtaub@clgplc.net | (248) 864-4934 |
| | jstarr@starrbutler.com |
| | npioch@starrbutler.com |

---

### DEFENDANT WINGS FINANCIAL CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT

Defendant WINGS FINANCIAL CREDIT UNION ("Wings" or "Defendant"), by and through its attorneys, STARR, BUTLER, ALEXOPOULOS & STONER, PLLC, hereby moves this Honorable Court for Summary Judgment, pursuant to Fed. R. Civ. P. 56(c), for the reasons set forth in the attached Brief in Support and supporting documents.[1]

---

[1] In accordance with L.R. 7.1, on February 3, 2012, Defendant's Counsel contacted Plaintiff's Counsel via email for purposes of obtaining concurrence in the subject Motion, however, Defendant was unable to obtain concurrence.

{00007834.DOCX}                                    1

Respectfully submitted,

STARR, BUTLER, ALEXOPOULOS & STONER, PLLC

By:     /s/Neil B. Pioch
        Joseph A. Starr (P47253)
        Neil B. Pioch (P67677)
        Attorneys for Defendant
        20700 Civic Center Drive, Suite 290
        Southfield, MI  48076
        (248) 864-4934
        jstarr@starrbutler.com
        npioch@starrbutler.com

DATED: February 3, 2012

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................i

INDEX OF AUTHORITIES......................................................................iii

INDEX OF CONTROLLING AUTHORITIES....................................vi

STATEMENT OF QUESTIONS PRESENTED..........................................vii

I.      INTRODUCTION.....................................................................2

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS......................3

        A.     The Parties.........................................................................3

        B.     Plaintiff's Loans with Wings.....................................................3

        C.     Plaintiff Admits to Having Financial Difficulties and Defaulting on her Mortgage..........................................................................4

        D.     Wings Initiates Non-Judicial Foreclosure Process Against Plaintiff.......................5

        E.     Wings Becomes Sole Owner of the Property when Plaintiff Fails to Exercise her Statutory Right to Redeem the Property............................................7

III.    STANDARD OF REVIEW.........................................................8

IV.    LEGAL ARGUMENT..............................................................9

        A.     Plaintiff Lacks Standing to Challenge the Foreclosure Sale after the Redemption Period Expired on July 26, 2011...................................................9

        B.     Defendant is Entitled to Summary Judgment as to Count I – Violation of RESPA, 12 U.S.C. § 2601 *et seq*..........................................................11

        C.     Plaintiff is not Entitled to Equitable, Declaratory and/or Injunctive Relief, as Alleged in Count II...........................................................13

        D.     Defendant is Entitled to Summary Judgment as to Count III – Breach of Contract/Wrongful Foreclosure.............................................14

        E.     Defendant is Entitled to Summary Judgment as to Count IV – Violation of Michigan Foreclosure Law...............................................15

F.     Defendant is Entitled to Summary Judgment as to Count V – Violation of Michigan Mortgage Brokers, Lenders and Servicers Licensing Act, MCL 445.1651.................................................................................................17

G.    Defendant is Entitled to Summary Judgment as to Count VI – Violation of Michigan Consumer Protection Act, MCL 445.901, *et seq*...................................17

H.    Defendant is Entitled to Summary Judgment as to Count VII – Violation of Fair Credit Reporting Act......................................................................................18

I.    Defendant is entitled to Summary Judgment as to Plaintiff's Tort Claims, Counts VII-XI.................................................................................................19

V.    RELIEF REQUESTED..................................................................................20

# INDEX OF AUTHORITIES

## State Cases

*Cramer v. Metropolitan Savings and Loan Ass'n*, 401 Mich 252, 261; 258 NW2d 20 (1977)...............................................................................15

*Freeman v. Wozniak*, 241 Mich App 633, 637; 617 NW2d 46 (2000)..............................13

*Hart v. Ludwig*, 347 Mich 559, 565; 79 NW2d 895 (1956)..........................................20

*Oades v. Standard Savs & Loan Ass'n*, 257 Mich 469, 472; 241 NW 262 (1932).................16

*Overton v. Mortg. Elec. Registration Sys.*, 2009 WL 1507342 (Mich. App. May 28, 2009 at *1.........................................................................................10

*Nelson v. Northwestern Savings & Loan Ass'n*, 146 Mich App 505; 381 NW2d 558 (1985).....20

*Newton v. West*, 262 Mich App 434, 436; 686 NW2d 491 (2004)....................................18

*Peterson v. Jacobs*, 303 Mich 329, 335; 6 NW2d 533 (1942).......................................16

*Piotrowski v. State Land Office Board*, 302 Mich 179, 4; NW2d 514 (1942).......................10

*Senters v. Ottawa Savings Bank, FSB*, 443 Mich 45, 50-53; 503 NW2d 639 (1993)..............9, 13

*Smith v. Globe Life Ins.*, 460 Mich 446, 465; 597 NW2d 28 (1999)................................18

*Sweet Air Investment, Inc. v. Kenney*, 275 Mich App 492, 497; 729 NW2d 656 (2007)..............14

*White v. Burkhardt*, 338 Mich 235, 239; 60 NW2d 925 (1953)......................................7

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252....................................................8

*Brown v. Bank of New York Mellon*, 2011 WL 6016901, at *7 (WD Mich December 2, 2011)..........................................................................19, 20

*Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009).........11

*Gonzalez v. EJ Mortg. Inc.*, 2010 WL 1996609, at *4 (S.D. Cal. May 17, 2010)........................12

*Hines v. Franklin Savings and Loan*, 2011 WL 882976 (S.D. Ohio Jan. 31, 2011)......................11

*Houston v. US Bak Home Morg Wisconsin Servicing*, 2011 WL 4905533
(E.D. Mich. Oct. 14, 2011)……..........................................................................................13

*In re Tomasevic*, 273 BR 682, 687 (MD FLA 2002)………………………………………….13

*Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)..........................................................8

*Kama v. Wells Fargo Bank*, 2010 WL 4386974 (E.D. Mich., Oct. 29, 2010)...............10

*Katz v. The Dime Savings Bank, FSB*, 992 F Supp 250, 258(WDNY 1997).................13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)………………………….9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................8

*McDaniel v. BAC Home Loan Servicing, LP*, 2011 WL 1261387 (D. Or. Mach 31, 2011)..........19

*Moriarty v. BNC Mortg. Inc.*, 2010 WL 5173830 (E.D. Mich. Dec. 15, 2010)............10

*Stein v. U.S. Bancorp*, 2011 WL 740537 (E.D. Mich. Feb. 24, 2011............................10

*Warth v. Seldin*, 422 U.S. 490, 498 (1975)........................................................................9

*Yaldu v. Bank of America*, 700 F.Supp.2d 832..............................................................19

## **Statutes**

MCL 445.901…………………………………………………………………………………....17

MCL 445.1601…………………………………………………………………………………....18

MCL 445.1651…………………………………………………………………………………....17

MCL 445.1672…………………………………………………………………………………....17

MCL 445.1631…………………………………………………………………………………....18

MCL 600.3201…………………………………………………………………………….....5, 14

MCL 600.3204………………………………………………………………………………15, 16

MCL 600.3208………………………………………………………………………………...16

MCL 600.3212………………………………………………………………………………...16

MCL 600.3236………………………………………………………………………………9, 10

MCL 600.3240(8)………………………………………………………………………………9, 10

**Federal Rules**

Fed. R. Civ. P. 56…………………………………………………………………………2, 8, 20

**Federal Statutes**

12 U.S.C § 2601…………………………………………………………………………………11

12 U.S.C. § 2605…………………………………………………………………………11, 12

15 U.S.C. § 1681…………………………………………………………………………………18

## INDEX OF CONTROLLING AUTHORITIES

### STATUTES

MCL 600.3201, *et seq.*

MCL 600.3204

MCL 600.3212

MCL 600.3236


### CASES

*Freeman v Wozniak*, 241 Mich App 633, 637; 617 NW2d 46 (2000)

*Hart v. Ludwig*, 347 Mich 559, 565; 79 NW2d (1956)

*Newton* v. *West*, 262 Mich App 434, 436; 686 NW2d 491 (2004)

*Peterson v Jacobs*, 303 Mich 329, 335; 6 NW2d 533 (1942)

*Piotrowski v. State Land Office Board,* 302 Mich. 179, 185; 4 NW2d 514 (1942)

## STATEMENT OF QUESTIONS PRESENTED

I.   **WHETHER PLAINTIFF LACKS STANDING TO CHALLENGE THE FORECLOSURE SALE AFTER THE REDEMPTION PERIOD EXPIRED ON JULY 26, 2011?**

> Defendant Wings answers, "YES."

> Plaintiff answers, "NO."

II.  **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I – VIOLATION OF RESPA, 12 U.S.C. § 2601, ET SEQ.?**

> Defendant Wings answers, "YES."

> Plaintiff answers, "NO."

III. **WHETHER PLAINTIFF IS ENTITLED TO EQUITABLE, DECLARATORY AND/OR INJUNCTIVE RELIEF, AS ALLEGED IN COUNT II?**

> Defendant Wings answers, "NO."

> Plaintiff answers, "YES."

IV.  **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III – BREACH OF CONTRACT/WRONGFUL FORECLOSURE?**

> Defendant Wings answers, "YES."

> Plaintiff answers, "NO."

V.   **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNTS IV & V – VIOLATION OF MICHIGAN FORECLOSURE LAW?**

> Defendant Wings answers, "YES."

> Plaintiff answers, "NO."

VI.  **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT V – VIOLATION OF MICHIGAN MORTGAGE BROKERS, LENDERS AND SERVICERS LICENSING ACT?**

> Defendant Wings answers, "YES."

> Plaintiff answers, "NO."

**VII.**    **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VI –VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT, MCL 445.901, ET SEQ.?**

       Defendant Wings answers, "YES."

       Plaintiff answers, "NO."

**VIII.**    **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VII –VIOLATION OF FAIR CREDIT REPORTING ACT?**

       Defendant Wings answers, "YES."

       Plaintiff answers, "NO."

**IX.**    **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TORTS CLAIMS, COUNTS VII – XI?**

       Defendant Wings answers, "YES."

       Plaintiff answers, "NO."

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PENNY LAWYER,

        Plaintiff,

                                    Case No. 11-12882
                                    Hon. Arthur J. Tarnow

v

WINGS FINANCIAL CREDIT UNION,

        Defendant.

_____

| | |
|---|---|
| ADAM G. TAUB & ASSOCIATES CONSUMER LAW GROUP, PLC<br>Adam G. Taub (P48703)<br>Attorneys for Plaintiff<br>18930 W. Ten Mile Rd., Suite 2500<br>Southfield, MI 48075<br>(248) 746-3790<br>adamgtaub@clgplc.net | STARR, BUTLER, ALEXOPOULOS & STONER, PLLC<br>Joseph A. Starr (P47253)<br>Neil B. Pioch (P67677)<br>Attorneys for Defendant<br>20700 Civic Center Drive, Suite 290<br>Southfield, MI 48076<br>(248) 864-4934<br>jstarr@starrbutler.com<br>npioch@starrbutler.com |

_____

**BRIEF IN SUPPORT OF DEFENDANT WINGS FINANCIAL CREDIT UNION'S
MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant WINGS FINANCIAL CREDIT UNION ("Wings" or "Defendant"), by and through its attorneys, STARR, BUTLER, ALEXOPOULOS & STONER, PLLC, and for its Brief in Support of its Motion for Summary Judgment, brought pursuant to Fed. R. Civ. P. 56(c), states as follows:

## I. **INTRODUCTION**

Prior to a Sheriff's Sale that occurred on January 26, 2011, and the expiration of the statutory six-month redemption period on July 26, 2011, Penny Lawyer ("Plaintiff") owned a parcel of residential real property commonly known as 29417 Alvin, Garden City, Michigan (the "Property"). Near the end of the redemption period, Plaintiff filed an eleven-count Complaint against the lender, Defendant Wings Financial Credit Union ("Defendant" or "Wings"), alleging various statutory and common law violations arising from its non-judicial foreclosure by advertisement of the Property pursuant to a mortgage it has held since November 21, 2008. (D.E. No. 1, Complaint, filed 7/02/11).

Despite the litany of allegations, Plaintiff fails to set forth any evidence of a wrongful or defective foreclosure. To the contrary, Plaintiff cannot dispute that she defaulted on her *very first payment* under the Mortgage; that she continued in default until May of 2009 when Plaintiff obtained a loan to get current on the Mortgage payments; and three months later, Plaintiff stopped making payments entirely. Plaintiff continues to reside on the Property with neither Defendant's authorization nor consent and without paying Defendant any money to live there. For the reasons detailed herein, Plaintiff's allegations lack merit and this Court should grant Defendant's Motion for Summary Judgment as to all eleven counts contained in the Complaint.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     The Parties.

Plaintiff currently resides at the Property at issue in this lawsuit. (Ex. A, Pl's Dep. Tr., p. 8). She inherited this single-family home from her parents upon their death via quitclaim deeds and has lived there continuously since 2000. (Ex. A, Pl's Dep. Tr., pp. 8-9; 16-17). Plaintiff is employed as a flight attendant with Delta Airlines and has worked for Delta—and its predecessor Northwest Airlines—since 1989. (Ex. A, Pl's Dep. Tr., p. 11). Plaintiff is approximately 63 years old. (Ex. A, Pl's Dep. Tr., p. 14). Plaintiff is a member of Wings by virtue of her employment with Delta. (Ex. A, Pl's Dep. Tr., p. 16). Wings is a credit union serving employees of air transportation companies and offers full-service, nationwide mortgage lending, refinancing and construction loans.[2]

### B.     Plaintiff's Loans with Wings.

At the time Plaintiff inherited the Property, it was not encumbered by a mortgage. (Ex. A, Pl's Dep. Tr., p. 17). In December 2008, Plaintiff took out a home equity loan with Wings, which the Parties subsequently converted into a mortgage on November 21, 2008, as part of a loan workout/refinancing transaction because Plaintiff had trouble making her loan payments. (Ex. A, Pl's Dep. Tr., pp. 17-18; Ex. B, Mortgage; Ex. C, Olson Dep. Tr., p. 69[3]). The principal amount of the mortgage was $107,600. (Ex. B, Mortgage, at p. 2). Wings recorded the mortgage on January 2, 2009, at Liber 47649, Page 1484-1503, with the Wayne County Register of Deeds. (Ex. D, Recorded Mortgage). As further evidence of the debt, Plaintiff gave Wings an adjustable rate promissory note for $107,600. (Ex. E, Note).

---

[2] See http://www.wingsfinancial.com.

[3] Patricia "Trysh" Olson, Wings' Collection Manager, provided Rule 30(b)(6) deposition testimony for Wings. Ex. C, Olson Dep. Tr., pp. 7-8).

**C.**    **Plaintiff Admits to Having Financial Difficulties and Defaulting on her Mortgage.**

*Plaintiff defaulted on her first mortgage payment by failing to make the payment in a timely fashion.* (Ex. A, Pl's Dep. Tr., p. 19). Plaintiff suffered severe and prolonged financial difficulties beginning when she took a leave of absence from work from December 3, 2007, to June 1, 2008, because of an injury. (Ex. A, Pl's Dep. Tr., p. 22). Even after returning to work, however, Plaintiff failed to make payments on her mortgage. (Ex. A, Pl's Dep. Tr., p. 23). Plaintiff's workers' compensation attorney, Kevin M. Kain, confirmed this fact in a letter he sent to Wings' attorney, Charles Holzman, on July 27, 2010, wherein Mr. Kain conceded that Plaintiff did not "have $4,864.40 to bring the mortgage up to date." (Ex. F, July 27, 2010 Letter from Kevin Kain to Charles Holzman). Additionally, Plaintiff documented her dire financial condition in a letter that she sent to Wings employee, Karen Olson, on November 8, 2010:

> [Plaintiff] received no pay for those seven months [when she was injured], they paid no hospital bills, and referred the hospital collection agencies to me. Because of that, my wages have been garnished by various hospital agencies, my credit has been ruined, and as you know, I have not been able to keep up with my mortgage payments.

(Ex. G, Plaintiff's November 8, 2010 Letter to Karen Olson).

At her deposition, Plaintiff also testified that creditors garnished her wages due to her inability to pay them. (Ex. A, Pl's Dep. Tr., p. 46). Plaintiff estimates approximately $45,000.00 in outstanding medical bills. (Ex. A, Pl's Dep. Tr., p. 50).

After defaulting on her first payment under the Mortgage, Plaintiff continued in default for five months until May 2009, when she obtained a 401(k) loan so as to get current on the Mortgage. (Ex. H, Wings' Servicing Notes, pp. 22-23). However, just three months later, Plaintiff stopped making payments entirely. *Id.*

**D.**     <u>**Wings Initiates Non-Judicial Foreclosure Process Against Plaintiff.**</u>

On May 20, 2010, Wings mailed Plaintiff a Notice of Default. (Ex. I, Notice of Default). In June of 2010, after Plaintiff failed to cure the default, Wings initiated a non-judicial foreclosure of the Mortgage by advertisement pursuant to MCL 600.3201, *et seq.* (Ex. H, Wings' Servicing Notes, p.18). Wings also provided Plaintiff with a Notice of Right to Negotiate Mortgage Loan Modification, advising Plaintiff of her right to contact a housing counselor. (Ex. J, Notice of Right To Negotiate Mortgage Loan Modification). Plaintiff exercised this right and chose to work with Wayne County Mortgage Foreclosure Prevention Program housing counselor Kent Spencer throughout the foreclosure process. (Ex. A, Pl's Dep. Tr., p. 31; Ex. K, July 9, 2010 email from Kent Spencer; Ex. L, July 14, 2010 Fax from Kent Spencer to Wings' Attorney with Release of Information Signed by Penny Lawyer). After Plaintiff notified Wings that she was working with Spencer, Wings adjourned the Sheriff Sale for the requisite 90 days. (Ex. A, Olson Dep. Tr., at 47; Ex. M, Olson Dep. Exhibits 12-18 Notices of Foreclosure Adjournment).

On July 8, 2010, Wings' foreclosure counsel, Charles Holzman, mailed Plaintiff a letter containing a breakdown of the amount she owed Wings though July 31, 2010. (Ex. N, July 8, 2010, Correspondence from Charles. J. Holzman). On July 14, 2010, Mr. Holzman transmitted a Notice of Default and Intent to Accelerate Letter (per the requirements of the Michigan foreclosure statutes) and notified Plaintiff about the benefits of the revised Michigan foreclosure statute and an opportunity for a workout. (Ex. O, July 14, 2010 Letter to Plaintiff Titled "Notice of Default In Mortgage, Notices Required by Public Act 30 of 2009, and Notice of Intent To Accelerate Loan"). On October 20, 2010, Mr. Holzman advised Plaintiff that:

> The above Mortgage is being foreclosed pursuant to Chapter 3 of the Revised Judicature Act, which is the statute governing foreclosures of mortgages by

advertisement and same and which requires neither personal service of a notice nor a hearing prior to the sale. Attached to this letter is copy of the Mortgage Foreclosure Notice which is currently being published. You will note that a Sheriff's Sale is scheduled for November 24, 2010, @ 1:00 p.m.

(Ex. P, October 20, 2010 Letter to Plaintiff).

Along with the October 20, 2010 letter, Mr. Holzman enclosed a Mortgage Foreclosure Notice, which provided that "notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue [sic] in Courtroom 1607, Wayne County Circuit Court Tower in the Coleman A. Young Municipal Center in Detroit in Wayne County, Michigan, at 1:00 p.m. on November 24, 2010" and indicating that "[t]he redemption period shall be six months from the date of such sale unless determined abandoned in accordance with MCL 600.3241a, in which case the redemption period shall be 30 days from the date of such sale." (Ex. Q, Mortgage Foreclosure Notice).

After closely reviewing Plaintiff's file and circumstances—including the fact that Wings recently made the loan in 2008, Plaintiff's intermittent periods of time without work dating back to 2007, accumulation of unpaid medical bills and wage garnishments—Wings declined to modify Plaintiff's mortgage (which already refinanced her home equity loan). (Ex. R, Wings' Recommendation for Loan Modification Denial; Ex. H, Wings' Servicing Notes p. 9). Wings left a message for Plaintiff's housing counselor on January 12, 2011 to inform of him Wings' decision to deny the loan medication request. (Ex. R, Wings' Recommendation for Loan Modification Denial). Plaintiff acknowledged that Wings never agreed to her modification proposal to pay $2500 down and then pay $700 per month starting December 1, 2010. (Ex. A, Pl's Dep. Tr., pp. 45; 50). Further, Plaintiff advised Wings that she had no income and could not make any payments until she resolved a workers' disability compensation claim she filed against Northwest Airlines. (Ex. G, Plaintiff's November 8, 2010 Letter to Karen Olson). In light of

these circumstances, Wings proceeded with the foreclosure. (Ex. R, Wings' Recommendation for Loan Modification Denial; Ex. H, Wings' Servicing Notes p. 9).

With assistance from her counsel, Plaintiff sent a letter to Wings dated March 30, 2011, whereby she indicated her belief that the redemption amount was too high and contained illegal charges.[4] (Ex. S, Plaintiff's March 30, 2011 Letter to Wings; Ex. A, Pl's Dep. Tr., pp. 56-57). Plaintiff acknowledged that Wings' attorney sent a timely response to her March 30, 2011 correspondence. (Ex. T, May 25, 2011 Letter from Charles Holzman to Penny Lawyer; Ex. A, Pl's Dep. Tr., pp. 59-60). Wings' attorney provided the Evidence of Sale (Affidavit of Posting) as an enclosure with this letter. (Ex. C, Olson Dep. Tr., pp. 28; Ex. U, Evidence of Sale; Ex. V, Jan. 19, 2011 Letter enclosing Sheriff's Deed with Publication, Non-Military and Redemption Affidavits, Bidsheet and Recording Information Sheet; Olson Dep. Ex. 3).[5]

**E.    Wings Becomes Sole Owner of the Property When Plaintiff Fails to Exercise her Statutory Right to Redeem the Property.**

After multiple adjournments, on January 26, 2011, Wings successfully bid $112,917.73 at the Sheriff's Sale, thereby becoming the sole owner of the Property and obtaining a Sheriff's Deed for it. (Ex. C, Olson Dep. Trans., at p. 62; Ex. W, January 19, 2011 Letter enclosing Sheriff's Deed with Publication, Non-Military and Redemption Affidavits, Bidsheet and Recording Information Sheet; Ex. W, Executed Sheriff's Deed on Mortgage Sale).

---

[4] Although Plaintiff contends this letter constitutes a Qualified Written Request ("QWR"), Defendant denies that it meets the statutory requirement for same. Nevertheless, Wings believes that even assuming *arguendo* this was a QWR, it responded in a timely and appropriate manner. This issue is discussed in more fully in n. 9, *infra*.

[5] Even though Defendant does not have the burden of proving the sufficiency of posting, per *White v. Burkhardt*, 338 Mich 235, 239; 60 NW2d 925 (1953), Wings produced sufficient evidence that notice of the sale was posted on the premises in accordance with the statute. The Affidavit of Posting indicates that:

> Jerry Williams, being duly sworn, deposes that on the 22nd day of October, 2010 A.D., he/she posted a notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to the front door.

(Ex. T, Affidavit of Posting, Ex. 19 from Olson's dep.). Hence, the Affidavit of Posting is signed and sworn by the affiant Jerry Williams and is otherwise in compliance with the relevant posting requirements.

**Significantly, Plaintiff never exercised her right of redemption because she admits that she did not have the money to redeem, nor did she make any attempt to borrow the sum needed to redeem.** (Ex. A, Pl's Dep. Tr., pp. 59). Although the redemption period expired on July 29, 2011, Plaintiff continues to live in the Property as a "squatter," with neither Wings' consent nor authorization (Ex. C, Pl's Dep. Tr., p. 60-61).[6] With only days left in her six-month redemption period, Plaintiff filed her Complaint on July 2, 2011. (D.E. No. 1). **Notably, Plaintiff never sought an injunction to equitably extend the redemption period or take any similar action.**

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jones v. Potter,* 488 F.3d 397, 403 (6th Cir.2007).

In opposing a motion for summary judgment, the nonmoving party must do more than raise some metaphysical doubt as to the existence of a fact; it must produce evidence that would be sufficient to require submission of the issue to a jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[6] Plaintiff does not make any insurance payments or payments to Wings to live there and pays only for utilities. (Ex. A, Pl's Dep. Tr., p. 60-61).

242, 252.  On summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.,* 477 U.S. at 248 (1986).

## IV. <u>LEGAL ARGUMENT</u>

### A. <u>Plaintiff Lacks Standing to Challenge the Foreclosure Sale after the Redemption Period Expired on July 26, 2011.</u>

Plaintiff lacks standing to pursue any claim related to the Property against Defendant. Plaintiff did not file the Complaint until *after* she defaulted on her mortgage, a Sheriff's Sale took place, and without having redeemed the Property prior to the expiration of the statutory six-month redemption period on July 26, 2011.  As a consequence, Plaintiff does not possess any interest in the Property because title vested with Wings—as the holder of the Sheriff's Deed—as a matter of law and, therefore, Plaintiff cannot maintain the instant action against Defendant for lack of standing. MCL 600.3236.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).[7]  The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan,* 504 U.S. at 561.  Here, Plaintiff fails to meet her burden because she lost standing to challenge the foreclosure when the redemption period expired on July 26, 2011.  MCL 600.3240(8).  Following foreclosure, the rights and obligations of the parties are governed by statute. *Senters v. Ottawa Savings Bank, FSB,* 443 Mich 45, 50-53; 503; NW2d 639 (1993).  The

---

[7] In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992), the Supreme Court described the requirements of standing as follows:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[]'"[;] second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." [Internal citations omitted.]

relevant statutory redemption period for this Property was six (6) months. MCL 600.3240(8). At the expiration of the statutory redemption period, the purchaser of the Sheriff's Deed is vested with "all the right, title and interest" in the property. MCL 600.3236.

In *Piotrowski v. State Land Office Board,* 302 Mich 179; 4 NW2d 514 (1942), the Michigan Supreme Court held that the mortgagors "lost all their right, title, and interest in and to the property at the expiration of their right of redemption." *Id.* at 185. **The standard under *Piotrowski* has been applied by Michigan courts—and by federal courts applying Michigan law—to bar former owners from making any claims with respect to foreclosed property after the end of the redemption period.**[8] Based upon the preceding authorities, this Court cannot redress Plaintiff's grievances with respect the allegedly improper foreclosure because Plaintiff lacks standing to maintain this lawsuit. *Lujan,* 504 U.S. 555 at 560-561; *Piotrowski,* 302 Mich at 185.

In the case at bar, it is undisputed that Defendant had the winning bid at the January 26, 2011, Sheriff's Sale and obtained an executed Sheriff's Deed. (Ex. W, Executed Sheriff's Deed on Mortgage Sale). Likewise, it is undisputed that Plaintiff did not redeem the property during the six-month redemption period. (Ex. A, Pl's Dep. Tr., pp. 59). Accordingly, upon the expiration of the redemption period on July 26, 2011, Wings—as the purchaser of the Sheriff's Deed—was vested with "all the right, title, and interest" that Plaintiff previously held in the property by operation of statute. MCL 600.3236. Because Plaintiff lacks standing to seek any of

---

[8] See, e.g., *Stein v. U.S. Bancorp,* 2011 WL 740537 (E.D. Mich. Feb. 24, 2011, at *3-4, attached as Ex. X); *Overton v. Mortg. Elec. Registration Sys.,* 2009 WL 1507342 (Mich. App. May 28, 2009, at *1) (dismissing former owner's claim of fraud where redemption period had expired); *Kama v. Wells Fargo Bank,* 2010 WL 4386974, *2 (E.D. Mich., Oct. 29, 2010, attached as Ex. Y) (dismissing plaintiff's claims for violation of the foreclosure statute, to quiet title and for promissory estoppel because redemption period had expired); *Moriarty v. BNC Mortg., Inc.,* 2010 WL 5173830 (E.D. Mich. Dec. 15, 2010, attached as Ex. Z) (dismissing action for declaratory judgment voiding foreclosure proceedings).

the relief she requests associated with the Property, Defendant is entitled to dismissal of this action in its entirety.

**B.**   **Defendant is Entitled to Summary Judgment as to Count I – Violation of RESPA, 12 U.S.C. § 2601 et seq.**

Alternatively, in the event that this Court determines Plaintiff has standing to proceed with this lawsuit, Defendant is entitled to summary judgment as to Count I of Plaintiff's Complaint, which alleges violations of RESPA, 12 U.S.C. § 2601, *et seq.* Plaintiff claims that Defendant violated RESPA without citing any specific RESPA violation, instead listing various *potential* violations to the statute. (D.E. No. 1, Complaint ¶¶ 26 & 27). Plaintiff's RESPA claim fails because it is undisputed that Defendant timely responded to Plaintiff's March 30, 2011 letter (Ex. S, Plaintiff's March 30, 2011 Letter to Wings; [9] Ex. T, May 25, 2011 Letter from Charles Holzman to Penny Lawyer; Ex. A, Pl's Dep. Tr., pp. 59-60), and to the extent Defendant did not provide all of the information requested by Plaintiff, it had no obligation to do so because Plaintiff's request far exceeded what is permitted by the statute.

RESPA, Section 2605, sets forth certain duties of a loan servicer after receiving borrower inquiries. The criteria for a QWR is defined in § 2605(e)(1)(B)(i) and (ii) and require

---

[9] Plaintiff's March 30, 2011, Letter (Ex. S) does not constitute a Qualified Written Request ("QWR"). A QWR request concerns a dispute in the *servicing* of the loan. *Hines v. Franklin Savings and Loan,* 2011 WL 882976, (S.D. Ohio 2011, attached as Ex. AA), at *6 ("The 'request' does not comport with statutory requirements or concern a dispute regarding the servicing of the loan; therefore, Defendant was not required to respond"); *Consumer Solutions REO, LLC v. Hillery,* 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) ("That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan"). Here, Plaintiff sent the March 30, 2011 Letter (Ex. S) post-foreclosure, after the Sheriff's Sale and during the redemption period. Thus, for Plaintiff to first raise an alleged *servicing* error at this juncture is disingenuous. "Servicing," in this context, "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 USC § 2605(i)(3). Hence, Plaintiff's March 30, 2011 Letter (Ex. S) does not constitute a QWR, and, accordingly, it cannot give rise to a RESPA violation.

any servicer of a loan that receives a QWR from the borrower for information relating to the servicing of the loan to provide a written response acknowledging receipt of the correspondence within 20 days. Next, within 60 days, the servicer must do one of three things:

> (1) correct the borrower's account and inform the borrower of those corrections in writing;
>
> (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes the borrower's account is correct; or
>
> (3) investigate and provide a written explanation to the borrower of the reasons that the servicer cannot obtain the information that the borrower is requesting.

*Id.*

Here, Wings complied with all of statutory requirements associated with Plaintiff's purported QWR. Plaintiff's March 30, 2011, included *17 non-specific inquiries associated with the Mortgage*—far exceeding the scope of information that may legally be obtained through a QWR. (Ex. S). Notwithstanding Plaintiff's overly broad request, Defendant provided a 20-day Acknowledgement of Plaintiff's letter. (Ex. BB, April 19, 2011 email from Chuck Holzman to Adam Taub). Then, within 60 days, Defendant transmitted the 60 Day Response that included an attached payment history, a written explanation of the status of the loan, a written explanation of why Plaintiff's requests were not properly the subject of a QWR and contact information should Plaintiff have further inquiries. (Ex. T).[10]  Plaintiff did not request additional information and Defendant had no further obligations under the statute. Because Defendant complied with all statutory requirements, Plaintiff's claim of a RESPA violation is without merit.

However, even if the Court finds a technical violation of RESPA, the borrower must still be able to substantiate her actual damages as a result of a RESPA violation. Courts have put the

---

[10] The servicer must only respond with reasons why the account is correct or reasons why the information is unavailable. *Gonzalez v. EJ Mortg., Inc.,* 2010 WL 1996609, at *4 (S.D. Cal. May 17, 2010) quoting 12 USC § 2605(e)(2), attached hereto as Ex. CC.

burden of persuasion with respect to such damages on the borrower, and further limit such damages to economic pecuniary injury. *Katz v The Dime Savings Bank, FSB,* 992 F Supp 250, 258 (WDNY. 1997); *In re Tomasevic,* 273 BR 682, 687 (MD FLA 2002).  In the case at bar, Plaintiff cannot establish that Defendant's alleged RESPA violation was the cause of her damages because it was Plaintiff's failure to make any payments towards her mortgage loan after August 2009 that was the cause of the foreclosure. See, e.g., *Houston v US Bank Home Mortg Wisconsin Servicing,* 2011 WL 4905533, at *6 (ED Mich October 14, 2011, attached as Ex. DD) ("Because Plaintiff's failure to make any payments towards her mortgage loan after at least July 2009, rather than U.S. Bank's RESPA violation, appears to be the cause of the foreclosure, U.S. Bank is entitled to summary judgment with respect to her RESPA claim").  Because Defendant has complied with the requirements of RESPA and Plaintiff cannot otherwise demonstrate that any alleged RESPA violation caused her damages, Defendant is entitled to summary judgment on this Count.

**C.    Plaintiff is not Entitled to Equitable, Declaratory and/or Injunctive Relief, as Alleged in Count II.**

Plaintiff is not entitled to any of the extraordinary relief she seeks in Count II of her Complaint.  A mortgage foreclosure will not be set aside absent fraud, accident, or mistake; the equities are not considered. *Freeman v Wozniak,* 241 Mich App 633, 637; 617 NW2d 46 (2000). Each of Plaintiff's equitable claims seek relief and Court intervention outside of what is legally permissible under Michigan law because Michigan foreclosure is ***strictly regulated by statute.*** See *Senters v Ottawa Sav Bank, FSB,* 443 Mich 45, 55-56; 503 NW2d 639 (1993).   Courts of equity, as well as law, must apply legislative enactments in accordance with the plain intent and language used by the legislature. *Id.* When a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere. *Id.* See also *Sweet Air*

*Investment, Inc, v. Kenney,* 275 Mich App 492, 497; 729 NW2d 656 (2007) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside").

The dispute at bar is governed not by equity, but by the Michigan Legislature's mandates in the Michigan foreclosure by advertisement statute, MCL 600.3201, *et seq.* Defendant is entitled to summary judgment on this Count because Plaintiff cannot demonstrate that Defendant's foreclosure was contrary to the statutory requirements as set forth therein. For instance, Plaintiff admits she was in default under the Mortgage. (Ex. A, Pl's Dep. Tr., p. 19; Ex. F, July 27, 2010 Letter from Kevin Kain to Charles Holzman indicating that Plaintiff did not "have $4,864.40 to bring the mortgage up to date"). Additionally, the Mortgage permits acceleration and foreclosure upon default (Ex. B, Mortgage, ¶ 22), and Defendant sent Plaintiff all required notices and allotments afforded to her under the statute (Ex. I, Notice of Default; Ex. J, Notice of Right To Negotiate Mortgage Loan Modification; Ex. N, July 8, 2010 Correspondence from Charles J. Holzman; Ex. O, July 14, 2010 Letter to Plaintiff Titled "Notice of Default In Mortgage, Notices Required by Public Act 30 of 2009, and Notice of Intent To Accelerate Loan; Ex. P, October 20, 2010 Letter to Plaintiff; Ex. Q, Mortgage Foreclosure Notice; Ex. T, May 25, 2011 Letter from Charles Holzman to Penny Lawyer). Because Plaintiff cannot establish Defendant's noncompliance with the relevant statutes nor has any evidence of fraud, accident, or mistake, Defendant is entitled to summary judgment as to Plaintiff's claims for equitable, declaratory and injunctive relief.

**D.    Defendant is Entitled to Summary Judgment as to Count III – Breach of Contract/Wrongful Foreclosure.**

As a threshold matter, Plaintiff fails to identify the contract that she alleges Defendant breached. Assuming, *arguendo,* that Plaintiff refers to the Mortgage (Ex. B), Plaintiff does not

dispute the validity of the mortgage contract. (D.E. No. 1, Complaint, ¶ 36). However, Plaintiff fails to cite any specific provision of the Mortgage that she believes Wings breached. To the contrary, Plaintiff admits that *she* materially breached first by failing to make timely mortgage payments. (Ex. A, Pl's Dep. Tr., p. 19; Ex. F, July 27, 2010 Letter from Kevin Kain to Charles Holzman indicating that Plaintiff did not "have $4,864.40 to bring the mortgage up to date"; Ex. H, Wings Servicing Notes). Because Plaintiff has failed to proffer any evidence that Wings breached any agreement, and because there is undisputed evidence that *Plaintiff* breached the Mortgage by failing to make timely periodic payments, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

**E.    Defendant is Entitled to Summary Judgment as to Count IV – Violation of Michigan Foreclosure Law.**

For Count IV, Plaintiff alleges a laundry list of purported violations of the foreclosure statute, MCL 600.3205, but fails to list any specific violations. (D.E. No. 1, Complaint ¶¶ 43; 48). Plaintiff gives no indication as to what features of the foreclosure process she claims are inadequate or missing.

The Michigan Supreme Court has held that statutory foreclosures have a long history in this state and should not be set aside without "good reason." See, e.g., *Cramer v Metropolitan Savings and Loan Ass'n,* 401 Mich 252, 261; 258 NW2d 20 (1977). Defendant is entitled to summary judgment because it has adhered to all statutory requirements for a foreclosure by advertisement. First, Plaintiff defaulted on a mortgage that contains a power of sale, as required by MCL 600.3204(1)(a). (Ex. B, Mortgage, ¶ 22). Defendant also meets the second requirement because there is no other suit pending for the recovery of the debt from the Plaintiff. MCL 600.3204(1)(b). Next, the Mortgage was recorded, in accordance with MCL 600.3204(1)(c). (Ex. D, Recorded Mortgage). Lastly, Wings owns the indebtedness because it never assigned or

{00007834.DOCX}                              15

transferred the Mortgage or the Note. *Id.* MCL 600.3204(1)(d).

Defendant also complied with all notice requirements, which are set forth in MCL 600.3212.[11] In accordance with its statutory obligations, Defendant provided Plaintiff with a breakdown of the amounts owed. (Ex. N, July 8, 2010 Correspondence from Charles J. Holzman). Defendant also transmitted a Notice of Default and Intent to Accelerate Letter (Ex. O, July 14, 2010 Letter to Plaintiff Titled "Notice of Default In Mortgage, Notices Required by Public Act 30 of 2009, and Notice of Intent To Accelerate Loan"); a Mortgage Foreclosure Notice (Ex. Q, Mortgage Foreclosure Notice); and a detailed response to what Plaintiff alleges was a QWR. (Ex. T, May 25, 2011 Letter from Charles Holzman to Penny Lawyer).

Defendant further complied with the publication requirements of MCL 600.3208 by publishing the foreclosure notices for five consecutive weeks in the Detroit Legal News. (Ex. EE, October 15, 2010 email from Ann of the *Detroit Legal News* to Carrie Landsiedel).

Plaintiff's foreclosure-related claims fail because she cannot identify an actual violation of these statutes and because Defendant has demonstrated compliance with the statutory requirements. Plaintiff has no evidence to suggest that the foreclosure was "wrongful" or "based upon an improper and illegal default." Specifically, Plaintiff has not pled any facts nor proffered any evidence to show that any alleged defect in any notice prevented her from: (1) making a bid at the sale; (2) obtaining the funds to pay the entire unpaid balance owing on the loan; (3) redeeming the property during the redemption period; or (4) that she was prejudiced in any other way. To the contrary, there is no dispute that Plaintiff defaulted on her first payment under the Mortgage; that Plaintiff continued in default until May of 2009 when she obtained a 401(k) loan

---

[11] Minor errors in publication should not invalidate the process. *See Peterson v Jacobs*, 303 Mich 329, 335; 6 NW2d 533 (1942) ("Statutory requirements must be complied with but such compliance only need be substantial…we again held that slight and inconsequential irregularities in a foreclosure would not vitiate the sale…"); *Oades v Standard Savs & Loan Ass'n*, 257 Mich 469, 472; 241 NW 262 (1932) (slight and inconsequential irregularities in the notice will not vitiate the sale).

to get current on the Mortgage payments; and only three months later, Plaintiff stopped making payments entirely. (Ex. H, Wings' Servicing Notes, pp. 7-9; Ex. A, Pl's Dep. Trans., pp. 33; 60; Ex. R, Wings' Recommendation for Loan Modification Denial). Based upon the foregoing, Plaintiff cannot show that she was prejudiced such that the Sheriff's Deed should be set aside. Accordingly, Defendant is entitled to summary judgment on Count IV.

**F.    Defendant is Entitled to Summary Judgment as to Count V – Violation of Michigan Mortgage Brokers, Lenders and Servicers Licensing Act, MCL 445.1651.**[12]

With respect to Count V, Section 1672 of the Michigan Mortgage Brokers, Lenders and Servicers Licensing Act sets forth the actions that can constitute a violation of the MBLSLA.[13] However, Plaintiff has not pleaded any facts illustrating how Wings allegedly violated the Act, nor has Plaintiff proffered any evidence of a violation. Accordingly, Defendant is entitled to summary judgment as to Count V.

**G.    Defendant is Entitled to Summary Judgment as to Count VI –Violation of Michigan Consumer Protection Act, MCL 445.901, *et seq*.**

In Count VI, Plaintiff alleges Defendant violated MCL 445.901 *et seq.*, also known as the Michigan Consumer Protection Act ("MCPA"). Defendant is entitled to summary judgment on this Count because the MCPA is inapplicable to Wings. The Michigan Court of Appeals has held that the MCPA does not apply to residential mortgage loan transactions where those

---

[12] Defendant believes Count V was captioned incorrectly as "Violation of Michigan Foreclosure Law," which was the caption for Count IV.

[13] It is a violation of this act for a licensee or registrant to do any of the following:

In pertinent part, this section provides:

    (a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.
    (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.
    (c) Intentionally or due to gross or wanton negligence, repeatedly fail to provide borrowers material disclosures of information as required by law.

MCL 445.1672(a)-(c).

transactions are specifically authorized by law. *See Newton* v. *West*, 262 Mich App 434, 436; 686 NW2d 491 (2004) ("Applying the standard established by the [Michigan] Supreme Court in *Smith*,[14] we conclude that the residential mortgage loan transactions fit squarely within the exemption").

In short, the transaction at issue in this case – a residential mortgage loan – is specifically authorized by law. As a mortgage servicing company, Wings operates under the many regulatory statutes that the Michigan legislature has enacted to protect mortgagees, including the Consumer Mortgage Protection Act (MCL 445.1631), the Mortgage Lending Practices Act (MCL 445.1601), and the Michigan Mortgage Brokers, Lenders, and Servicers Act (MCL 445.1652). These types of mortgage transactions are specifically authorized under laws administered by state and federal regulatory boards acting under applicable statutes. Therefore, this transaction is exempt from the MCPA, and Plaintiff's claim under the MCPA must fail.

## H.   Defendant is Entitled to Summary Judgment as to Count VII – Violation of Fair Credit Reporting Act.

Plaintiff claims that Defendant was "required to cease reporting"…"derogatory information" during the pendency of the 60 Day period following Plaintiff's issuance of her QWR. (D.E., No. 1, Complaint, ¶ 55). Pursuant to 15 U.S.C. § 1681s–2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency ("CRA"). 15 U.S.C. § 1681s–2(b) establishes a private cause of action where, upon receipt of a notice from a CRA of a dispute, the furnisher of information is required to investigate within specified time limits to determine the accuracy or completeness of the information provided to the CRA and must modify, delete or block reporting information that is inaccurate or incomplete. However, this process is *only* triggered after a consumer notifies a CRA of a dispute. An allegedly

---

[14] *Smith* v. *Globe Life Ins.*, 460 Mich 446, 465; 597 NW2d 28 (1999) held that when a general transaction is authorized by law, that transaction is exempt from the MCPA.

aggrieved private party cannot bypass the CRA. *See, McDaniel v. BAC Home Loan Servicing, LP,* 2011 WL 1261387, at *5 (D. Or. Mar. 31, 2011, Ex. FF).

Plaintiff admits that she did not provide notice to any credit agency disputing the debt of Wings. (Ex. A, Pl's Dep. Tr., pp. 61). Accordingly, Plaintiff does not have a private right of action against Defendant for failing to correct or cease reporting her credit information. See *Yaldu v. Bank of America,* 700 F.Supp.2d 832, 842 (holding that the plaintiff's claim under the FCRA failed because there was no allegation that the plaintiff's credit was unjustifiably marred, or that the plaintiff communicated his belief of the mistake to the credit reporting agencies).

Finally, assuming *arguendo* that Plaintiff had a private right of action against Wings under the FCRA, Defendant is entitled to summary judgment because Plaintiff has failed to provide any evidence that any of the information Defendant gave to any CRA was false. Moreover, Plaintiff never provided Defendant with a valid QWR such that Wings had any obligation to cease reporting her credit data. See, e.g., *Brown v Bank of New York Mellon,* 2011 WL 6016901, at *7 (WD Mich December 2, 2011, Ex. GG). See also n.9, *supra,* advancing Defendant's contention that Plaintiff never transmitted a valid QWR. Lastly, Plaintiff admits that her poor credit rating resulted from her leave of absence from work and subsequent garnishments, as opposed to the foreclosure or the information Wings may have provided to a CRA. (Ex. G, Plaintiff's November 8, 2010 Letter to Karen Olson); (Ex. A, Pl's Dep. Tr., p. 46; 50). Accordingly, Defendant is entitled to summary judgment as to Count VII.

## I.    Defendant is Entitled to Summary Judgment as to Plaintiff's Torts Claims, Counts VII – XI.

Plaintiff has brought four additional tort claims against Defendant: Intentional Infliction of Emotional Distress – Count VIII; Negligence – Count IX; Negligence *Per Se* – Count X; and Defamation by Libel – Count XI. Each of these tort claims fail because an action in tort may

not be maintained where a contractual agreement exists unless a duty—separate and distinct from the contractual obligation—is established. *Hart v. Ludwig*, 347 Mich 559, 565; 79 NW2d. 895 (1956); *Nelson v Northwestern Savings & Loan Ass'n*, 146 Mich App 505; 381 NW2d 558 (1985). Here the Parties' relationship is governed by the terms of their contract, i.e., the Mortgage. Following *Hart,* no duties exist separate and distinct from the contractual obligations contained in the Mortgage.

Additionally, to the extent Plaintiff's tort claims are based upon Defendant's requests for payment, warnings of foreclosures, applications of Plaintiff's funds to late payments, etc., Defendant's conduct was privileged because it was consistent with Wings' legal enforcement of its contractual rights. See *Brown*, 2011 WL 6016901 *supra*, at *5, Ex. GG. Accordingly, Defendant is entitled to summary judgment on Counts VII – XI.

## V.    <u>RELIEF REQUESTED</u>

WHEREFORE, Defendant WINGS FINANCIAL CREDIT UNION respectfully requests that this Honorable Court enter an Order GRANTING Defendant WINGS FINANCIAL CREDIT UNION'S Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56(c).

Respectfully submitted,

STARR, BUTLER, ALEXOPOULOS & STONER, PLLC

/s/Neil B. Pioch
Joseph A. Starr (P47253)
Neil B. Pioch (P67677)
Attorneys for Defendant
20700 Civic Center Drive, Suite 290
Southfield, MI 48076
(248) 864-4934
jstarr@starrbutler.com
npioch@starrbutler.com

DATED: February 3, 2012

{00007834.DOCX}                    20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PENNY LAWYER,

      Plaintiff,

      Case No. 11-12882
      Hon. Arthur J. Tarnow

v

WINGS FINANCIAL CREDIT UNION,

      Defendant.

---

| ADAM G. TAUB & ASSOCIATES CONSUMER LAW GROUP, PLC | STARR, BUTLER, ALEXOPOULOS & STONER, PLLC |
|---|---|
| Adam G. Taub (P48703) | Joseph A. Starr (P47253) |
| Attorneys for Plaintiff | Neil B. Pioch (P67677) |
| 18930 W. Ten Mile Rd., Suite 2500 | Attorneys for Defendant |
| Southfield, MI 48075 | 20700 Civic Center Drive, Suite 290 |
| (248) 746-3790 | Southfield, MI 48076 |
| adamgtaub@clgplc.net | (248) 864-4934 |
| | jstarr@starrbutler.com |
| | npioch@starrbutler.com |

---

## CERTIFICATE OF SERVICE

The undersigned says that on February 3, 2012, she has caused to be served a copy of the following documents in the above captioned matter *via* the Court's Electronic Court Filing system upon:

      Adam G. Taub, Esq.
      Adam G. Taub & Associates Consumer Law Group, PLC
      Attorneys for Plaintiff
      18930 W. Ten Mile Rd., Suite 2500
      Southfield, MI 48075
      adamtaub@clgplc.net

DOCUMENTS:      Defendant Wings Financial Credit Union's Motion for Summary Judgment, Brief in Support of Motion, and this Certificate of Service.

I declare that the above statements are true and correct to the best of my knowledge, information and belief.

/s/Kiersten Plane