UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

PENNY LAWYER,

     Plaintiff,                     DEMAND FOR JURY TRIAL

-vs-                            Case No. 11-12882
                                   Hon. Arthur J Tarnow

WINGS FINANCIAL CREDIT UNION,

     Defendant.

## **<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S<br>MOTION for SUMMARY JUDGMENT</u>**

The Plaintiff, through her, and in response to Defendant's Motion for Summary Judgment/Dismissal, denies that this Defendant is entitled to such relief for reasons set forth in the accompanying Brief in Opposition and requests that the Court DENY Defendant's motion.

                         Respectfully Submitted,

                         ADAM G. TAUB & ASSOCIATES
                         CONSUMER LAW GROUP, PLC

                         By:     <u>s/ Adam G. Taub</u>
                                 Adam G. Taub (P48703)
                                 Attorney for Plaintiff
                                 17200 West 10 Mile Rd. Suite 200
                                 Southfield, MI 48075
                                 (248) 746-3790
                                 adamgtaub@clgplc.net

Dated:  March 19, 2012

UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

PENNY LAWYER,

      Plaintiff,                       DEMAND FOR JURY TRIAL

  -vs-                                Case No. 11-12882
                                        Hon. Arthur J Tarnow

WINGS FINANCIAL CREDIT UNION,

     Defendant.

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    s/ Adam G. Taub
        Adam G. Taub (P48703)
        Attorney for Plaintiff
        17200 West 10 Mile Rd. Suite 200
        Southfield, MI 48075
        (248) 746-3790
        adamgtaub@clgplc.net

Dated:  March 19, 2012

**TABLE OF CONTENTS**

AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I. INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    <u>Origination and servicing</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    <u>Plaintiff contacts the Defendant to save her home</u> . . . . . . . . . . . . . . . . . . . . . . . . 1
    C.    <u>The Qualified Written Request</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    D.    <u>Defendant's Response to the Qualified Written Request</u> . . . . . . . . . . . . . . . . . . . 5

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    <u>The Defendant violated the R.E.S.P.A.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.    The transactions in this lawsuit are covered under R.E.S.P.A. . . . . . . . . 7
        2.    Defendant willfully violated R.E.S.P.A. . . . . . . . . . . . . . . . . . . . . . . . . . 8
            a.    Failing to provide a written explanation  . . . . . . . . . . . . . . . . . . 8
            b.    Failing to provide the information requested . . . . . . . . . . . . . . . 8
            c.    Failing to cease adverse credit reporting . . . . . . . . . . . . . . . . . . 8
        3.    Plaintiff suffered damages and may recover them  . . . . . . . . . . . . . . . . . 9

    B.    <u>The Defendant violated the F.C.R.A.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    Defendant verified derogatory information . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    Defendant verified inaccurate information  . . . . . . . . . . . . . . . . . . . . . . 11
            a.    Definition of Accuracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    <u>Plaintiff has standing to challenge the foreclosure where the redemption period never started.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.    <u>Plaintiff's Claims arising out of the defective foreclosure by advertisement – Counts II through V – should not be disposed of via Rule 56 where Defendant failed to follow the statutory notice requirements</u> . . . . . . . . . . . . . . . . . . . . . . . 14

    E.    The Plaintiff agrees to dismiss her tort claims  . . . . . . . . . . . . . . . . . . . . . . . . . 18

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## <u>AUTHORITIES CITED</u>

Fed. R. Civ. P. 56

FTC Official Staff Commentary to FCRA §§ 607 & 611 (1977)

*Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp.2d 492, 510 (D. Md. 2004)

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986)

*Bruce v. First U.S.A. Bank, N.A.,* 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)

*Crane v. Trans Union, L.L.C.*, 282F. Supp. 2d 311 (ED. Pa. 2003)

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 416 (4th Cir. 2011)

*Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996)

*Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004)

*Johnstone v Bank of Am., N.A.* 173 F Supp 2d 809  (2001, ND Ill)

*Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cit. 1984)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)

*Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002)

*Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)

*Wilson v. Prudential Fin.*, 603 FSupp. 2d 163, 168 (D.D.C. 2009)

## I.      <u>INTRODUCTION</u>

At the heart of this lawsuit is a mortgage lender's misappropriation of payments, its refusal to follow the foreclosure by advertisement statute and its subsequent violations of federal law as to its responsibilities as a servicer of a mortgage and as a furnisher of information to national credit reporting agencies.

The salient facts in this matter are simple.  Ms. Lawyer got behind on her mortgage. To try to save her home, she sent additional monies to try to get caught up.  Defendant did not correctly apply these payments and proceeded with a foreclosure by advertisement, which was defective because the Defendant failed to give proper notice under the statute.

At issue in this matter is the failure to adequately respond to the Plaintiff's qualified written request and the Defendant's wilful or negligent violations of the federal Fair Credit Reporting Act. These claims are pleaded adequately, as Defendant does not seek relief under Rule 12.  Moreover, the Defendant is not entitled to Summary Judgment as the record provides sufficient evidence to create a genuine issues of material fact which preclude such relief.

## II.     <u>COUNTER-STATEMENT OF UNDISPUTED FACTS</u>

### A.      <u>Origination and servicing</u>

On or about November 21, 2008, Plaintiff and the Defendant entered into a Mortgage and note with Defendant.  (Def's Brief, Exhibit B.)

### B.      <u>Plaintiff gets injured and falls behind on her payments</u>

Plaintiff suffered severe and prolonged financial difficulties beginning when she took a leave of absence from work from December 3, 2007, to June 1, 2008, because of an injury. (Def's Brief, Ex. A, Pl's Dep. Tr., p. 22).   She was unable, in July of 2010, to scrape together the $4,864.40

needed to bring the loan current." (Def's Brf. Ex. F, July 27, 2010).  All of Ms. Lawyer's financial difficulties stemmed from her being unable to work and from her employer challenging her worker's compensation claim.  (Def's Brf. Ex. G, Plaintiffs November 8, 2010 Letter to Karen Olson).

On November 10, 2010, Plaintiff sent $2,500.00 to Defendant and on December 1, 2010, Plaintiff sent another $700.00 to the Defendant. (See Exhibit B – Qualified Written Request dated March 30, 2011).

Though the counsel for Defendant sent several letters regarding foreclosure, no notice was ever posted to the house that would have allowed the Defendant to foreclose non-judicially.   (See Exhibit B – Qualified Written Request dated  March 30, 2011; See also, Exhibit A – Deposition of Penny Lawyer, page 61).

On January 26, 2011, the Sheriff's Sale proceeded and Defendant purchased the property. Plaintiff had no adequate notice of the sale.  *Id.*

## C.    The Qualified Written Request

On March 30, 2011, Plaintiff sent a qualified written request to the Defendant  which included name, loan number and the property address; the qualified written request indicated a statement of the reason for the belief that there was an error; and requested in sufficient detail that the Defendant provide specific information so that Plaintiffs could determine the exact nature of the disputed items. (See Exhibit B – Qualified Written Request dated March 30, 2010) Defendant received a copy of the qualified written request.  *Id.*  Defendant acknowledged receipt of the qualified written request. (See Exhibit C – May 25, 2010 letter from Defendant to Plaintiff.)

The qualified written request stated, in relevant part:

I am writing because I recently found out that you sold my

-2-

house at a foreclosure sale which took place in January of this year. The problem is, nothing was ever posted on my house that would have allowed you to conduct a non-judicial foreclosure.

I am also concerned because on November 10, 2010, I sent $2,500.00 to you and on December 1, 2010, I sent another $700.00. I was working with a housing counselor at the time, and he instructed me that if I sent in these amounts, that you would agree to forbearance until my worker's compensation claim was resolved.

That money was not applied to the mortgage. Instead, with no legal notice, you went ahead and sold my home. I believe that the redemption amount is too high and contains illegal charges that should not be included. Specifically, I believe that you added unnecessary fees arising from this foreclosure process including late fees, inspection fees, and other costs that you did not actually pay.

I am requesting that you send me information about the payments and how they were applied, fees, costs and escrow accounting on the loan referenced above. I believe that there are accounting errors regarding how these payments were credited and there are also errors regarding charges, late fees and other finance charges. This is a qualified written request.

Specifically, I am requesting the following:

1)      a complete payment history, including, but not limited to the dates and amounts of **<u>ALL</u>** the payments made on the loan to date;

2)      a complete history of charges, including, but not limited to the dates and amounts of **<u>ALL</u>** the charges made on the account to date, noting any credits to principal, any credits to interest, amounts placed in escrow and paid from escrow;

3)      a breakdown of any amount of claimed arrears on delinquencies;

4)      an explanation of how any amounts claimed due or in arrears were calculated, including, but not limited to a reconciliation of the loan amortization with the disclosures provided;

5)      a copy of the entire loan agreement including any riders;

6)      proof of any assignment to subsequent purchasers or from
        previous owners of the loan;

7)      the payment dates, purpose of payment and recipient of all
        escrow items charged to the account;

8)      a statement of the finance charges and an explanation – citing to the loan
        agreement and any other source used to calculate any adjustment – of how
        these finance charges were calculated and the reasons for any increase or
        decrease within the last 60 months;

9)      a copy of any annual escrow statements and notices of a shortage, deficiency
        or surplus, sent to me within the last three (3) years;

10)     the names, addresses, and phone numbers of any party that received any
        payment from the account, along with a copy of any invoice substantiating
        that charge;

11)     all notes, recordings and transcripts of all phone calls between me and your
        company, including calls from your foreign-based representatives;

12)     all correspondence between your company and me, including any adverse
        action notices sent pursuant to the Equal Credit Opportunity Act;

13)     a history of all late charges and penalties, a written explanation as to why
        such charges accrued;

14)     any evidence your company has that my home was not insured, including, but
        not limited to any notice your company has received from my insurer;

15)     an itemized list of all other charges, including, but not limited to attorneys
        fees, anticipated attorneys fee, and "other charges" along with invoices
        substantiating these charges;

16)     The name, address, and telephone number of the owner of the note or the
        master servicer of the note;

17)     Presentment of the original promissory note. *Id.*

-4-

**D.**    <u>**Defendant's Response to the Qualified Written Request**</u>

In response to the qualified written request, Defendant sent a letter to the Plaintiff on May 25, 2010.  (See Exhibit C – May 25, 2010 letter from Defendant to Plaintiff.)  The Court should note that this letter does not fully address the concerns of the Plaintiff as expressed in her qualified written request.

After the commencement of the 60-day statutory period during which the Defendant, under 12 U.S.C. §§ 2605(e)(3), was required to cease providing derogatory, disputed credit reporting, Plaintiff sent reinvestigation letters to the three major credit bureaus. (See Exhibit D – April 8, 2011 letters from Plaintiff to credit bureaus.)  Within that time-frame, the Defendant verified the derogatory credit information about the Plaintiff's mortgage.  (See Exhibit E – Plaintiff's credit bureau reinvestigation results).  Defendant failed to discontinue credit reporting during the pendency of the qualified written request.  *Id.*

Plaintiff  suffered damages as a result of the Defendant failing to address her concerns regarding the balance due and as a result of the Defendant's continued reporting during the 60 day period and these damages are reflected in the credit reports.

**III.**    <u>**STANDARD OF REVIEW**</u>

<u>Rule 56(c)</u>

Summary judgment is proper, ". . .if the pleadings, the discovery and  disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court reviews all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In order to defeat a summary judgment motion, the nonmoving party must show sufficient evidence to create a genuine issue of material fact. *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Entry of summary judgment is only appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

## IV.    ARGUMENT

### A.    The Defendant violated the R.E.S.P.A. – Summary Judgment is not proper

Defendant moves for summary judgment on Plaintiff's claim that Defendant failed to adequately respond to Qualified Written Request ("QWR"). Defendant argues that the response to the QWR fulfilled all obligations under RESPA. Plaintiff contends that the written response to the QWR failed to address her specific concerns over the amounts about which Plaintiff was disputing and seeking clarification. Plaintiff also notes that Defendant failed to cease reporting disputed, derogatory information during the 60 business day period following the receipt of the QWR. Defendant, in the alternative, argues that even if it did not properly respond, Plaintiff cannot identify actual damages stemming from Defendant's failure to respond to their QWR.

Defendant's arguments are founded on the erroneous notion that no evidence, in a light most favorable to the Plaintiff, is available to create a question of fact as to whether the Defendant violated R.E.S.P.A. This is clearly not the case and the Defendant is not entitled to relief under Rule 56.

-6-

**1.      The transactions in this lawsuit are covered under the R.E.S.P.A.**

R.E.S.P.A. applies to federally regulated mortgage loans, which include subordinate liens and loans used to payoff an existing loan secured by the same property.  12 U.S.C §§ 2601 *et seq*. Plaintiff's pleadings set forth a claim that the Defendant violated § 2605(e) of the R.E.S.P.A. which reads, in relevant part:

> (e) Duty of loan servicer to respond to borrower inquiries.
>
> (2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall --
>> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
>
> (3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USCS § 1681a]).   See 12

-7-

U.S.C. § 2605(e)

Clearly, the facts in this case establish that Plaintiffs' transactions involved a federally regulated mortgage loan.  Equally clear is the fact that Defendant did not comply with this section of R.E.S.P.A., but rather, failed to respond to the Plaintiff's specific concerns.

### 2.    Defendant willfully violated R.E.S.P.A.

#### a.    Failing to provide a written explanation

In response to the qualified written request, under 12 U.S.C. §2605(e)(2)(B), Defendant was required to provide the Plaintiff with a written explanation or clarification which included a statement of the reasons why Defendant believed the Plaintiff's account to be correct.  In other words, faced with Plaintiff's concerns that the amount owed was excessive and contained amounts she should not owe, and did not credit her for payments she made, the Defendant failed to address these issues at all.

#### b.    Failing to provide the information requested by the Plaintiff

Defendant willfully violated the R.E.S.P.A. by failing to provide the Plaintiff with a written explanation or clarification that included the information she requested.  This is a violation of 12 U.S.C. §2605(e)(2)(B).

#### c.    Failing to cease adverse credit reporting

Defendant willfully violated R.E.S.P.A. by providing information regarding overdue payments to the national credit bureaus during the 60 day period which began on the date of Defendant's receipt of the qualified written request.  This is a violation of 12 U.S.C. § 2605(e)(3). It is unclear how Defendant can deny that it continued to report derogatory information during the 60 day period following the receipt of the qualified written request.

-8-

### 3.      Plaintiff suffered damages and may recover them

Under 12 U.S.C. § 2605(f), Plaintiff may recover damages and costs for violations of

R.E.S.P.A., which states, in relevant part,

> (f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of--
> > (A) any actual damages to the borrower as a result of the failure; and
> > (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000.00.
>
> *****
> (3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f)

In this matter, the Plaintiff may recover her actual economic damages, along with interest,

late fees assessed by the errors of the Defendant, as well as other actual damages to be determined

by the jury, which would include actual damages for emotional distress.   A borrower can recover

actual damages for emotional distress resulting from lender's violations of 12 U.S.C. § 2605(e)(3).

*Johnstone v Bank of Am., N.A.* 173 F Supp 2d 809  (2001, ND Ill).

In this case, Plaintiff reasonably anticipates that a jury, when presented with the facts, will

award damages for emotional distress simply based on the testimony of the Plaintiff.  Given the

opportunity to correct its errors, Defendant declined and failed to do so, putting the Plaintiff in the

position of having to bring the instant lawsuit.  Further, it is undisputed that the Defendant damaged

the Plaintiff's credit reputation.   The result of this was to cause Plaintiff to be shackled to

-9-

Defendant's mortgage loan and prevent her from even attempting to seek a loan elsewhere.

As such, Plaintiff's R.E.S.P.A. claim should not be disposed of via Rule 56.

**B.**     **The Defendant violated the F.C.R.A.**

Defendant's next argument is based on the contention that no evidence, in a light most favorable to the Plaintiff, is in the record to create a question of fact as to whether the Defendant violated F.C.R.A.   Again, this is clearly not the true state of affairs and the Defendant is not entitled to relief under Rule 56.

Under 15 U.S.C. § 1681s-2(b), Defendant was required to conduct an investigation as to the accuracy of the disputed information triggered by the Plaintiff's correspondence to the credit bureaus.  The investigation must be reasonable. [See *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004); *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp.2d 492, 510 (D. Md. 2004); and *Bruce v. First U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000)]. The reasonableness of an investigation generally is a question for the trier of fact to resolve. [See *Westra*, 409 F.3d at 827; *Akalwadi*, 336 F. Supp. 2d at 510; *Bruce*, 103 F. Supp. 2d at 1143. 4]

**1.**     **Defendant verified derogatory information that was in dispute**

The record demonstrates clearly that the Defendant willfully failed to cease reporting derogatory information about the Plaintiff's mortgage loan and willfully continued to report such information between the receipt of the qualified written request and the 60 days following the receipt of that request.  Specifically, the record shows clearly that Defendant, in April of 2011, told the national credit reporting agencies that the Plaintiff was delinquent during the period of time in question.

-10-

As the Defendant had a legal duty under the R.E.S.P.A. to cease reporting the information in dispute during the QWR period, they violated the FCRA by verifying the information that should have been removed in the first place.  In any case, it is for the trier of fact to determine what, if anything, the Defendant did by way of reasonable investigation.  As such, relief under Rule 56 is not appropriate.

### 2.   **Defendant verified inaccurate information**

Further, contrary to the Defendant's assertion, the information it verified was not "accurate" as a matter of law.

### a.   **Definition of Accuracy**

Despite the importance of the term "accuracy" in interpreting the FCRA, the Act does not define the term.  Dictionaries variously define "accuracy" to mean "freedom from mistake or error" *Merriam-Webster Online Dictionary* (2006). , "correct, exact and without any mistakes," *Cambridge Advanced Learner's Dictionary* (2003) and "conformity to fact." [1]  Information can be inaccurate if it is potentially misleading.  While credit information may be determined inaccurate by proof of how it was understood in a specific transaction,  it may also be found inaccurate upon evidence of how it would be understood and interpreted in the industry.  *Crane v. Trans Union, L.L.C.*, 282F. Supp. 2d 311 (ED. Pa. 2003),

The concept of "accuracy" is an objective one. A consumer report either is or is not accurate. If it is accurate when prepared a certain way, it will always be accurate when prepared that same way. As one court explained:

We begin, therefore, by presuming that Congress used the word "accuracy"

---

[1]

objectively throughout the FCRA. There is no basis for disturbing this presumption
because a consistently objective interpretation of "accuracy" does not render super-
fluous any part of the FCRA

> *Crane v. Trans Union, L.L.C.*, 282F. Supp. 2d 311, 317 n.7 (ED. Pa. 2003).

Information that is obsolete, and by analogy, not to be reported as a matter of legal mandate,

will also fail to meet as standard of "maximum possible accuracy."  This view is also supported by

the FTC in its FTC Official Staff Commentary (FTC Staff Commentary) and other interpretations

(See attached Exhibit F – *FTC Official Staff Commentary  re: FCRA §§ 607 items 3F(1), (2), (3),*

*611 items 5, 6* (1977).

Whether information is accurate is a determination best left for a jury. [*Dalton v. Capital*

*Associated Indus., Inc.*, 257 F.3d 409, 416 (4th Cir. 2011)  ("If a jury concludes, as it reasonably

could, that the report indicates that Dalton was guilty of a felony, inaccuracy would be established

because it is undisputed that Dalton pleaded guilty to a misdemeanor"); See also *Wilson v.*

*Prudential Fin.*, 603 FSupp. 2d 163, 168 (D.D.C. 2009) (whether information was misleading and

inaccurate was question for the trier of fact).]

The information reported by the Defendant to the credit bureaus – that Plaintiff was

delinquent on her mortgage – was, as a matter of law, FALSE because the Defendant was required

by law to stop reporting it during the 60 business days after it received the qualified written request.

In this case, it is difficult to see how a reasonable trier of fact could find otherwise.  In any case,

Plaintiff contends and the case law agrees that the issue of accuracy is a fact issue.  As such, relief

under Rule 56 as to Plaintiff's FCRA claim should not be available.

Plaintiff's Complaint alleges a violation of Michigan Foreclosure Law and sets forth several

ways in which the Defendant bank violated that law.  Defendants argue that Plaintiff lacks standing

to challenge either foreclosure.  Defendant also argues that Plaintiff cannot challenge the first foreclosure sale because it was rescinded and therefore any claims challenging that foreclosure are moot.  Finally, Defendant argues that the Plaintiff has not alleged any facts that would warrant a challenge to the second foreclosure sale.

### C.    Plaintiff has Standing to Challenge the Foreclosure

Defendant asserts Plaintiff does not have standing to bring suit because the redemption period purportedly expired.  Defendant relies on several cases to extrapolate the incorrect conclusion that a litigant who challenges a foreclosure during the purported redemption period – as Plaintiff did in this matter – is barred from pursuing these claims where the redemption period ends after claims are filed.  In none of the cases cited by Defendant did the plaintiffs challenge the foreclosure itself. Additionally, a strict reading of the statute itself sets forth no such time bar.  In this case, Plaintiff filed a lawsuit and specifically challenged the foreclosure by advertisement prior to the end of the redemption period.

Accordingly, the current case is distinguishable from those cited by the Defendant. Moreover, these cases fail to raise the most basic and common-sense argument:  The redemption period, which only begins after a ***valid sheriff's sale***, never began in the first place, and thus couldn't have expired.

First, the statute is silent as to any time bar for challenging foreclosures.

A borrower on whom notice is required to be served under this section who is not served and against whom foreclosure proceedings are commenced under this chapter may bring an action in the circuit court for the county in which the mortgaged property is situated to enjoin the foreclosure.    M.C.L § 600.3205a(5)

-13-

If the Michigan legislature had intended to limit standing, it would have included such limiting language. None is included in the statute. The only compelling authority is the statute itself and there is no limit on standing.

Further, under the Defendant's proposed standing rule, absurd results would ensue. The most obvious example of this would be the homeowner that received an eviction lawsuit as the first notice that a foreclosure had occurred. Under this set of facts, the homeowner could go into court and say, "Judge, I can prove that nothing was posted on my home. I can prove that nothing was ever mailed to me regarding any foreclosure sale. I can even prove that the lender failed to advertise any sheriff's sale," and the Court would respond, "Sorry, it's too late to challenge the foreclosure. The redemption period has run."

In the instant case, as distinguished from those cited by the Defendant, Plaintiff states that no valid foreclosure occurred by virtue of a lack of posting. Defendant seeks, on the one hand, to discount the notice requirements of circumventing judicial review to dispossess the Plaintiff of her property – requirements set forth clearly in the statute – and then, on the other hand, to rely on a "technicality" that doesn't appear in the statute, to preclude Plaintiff from challenging the statutory mandates. Defendant, under these circumstances, is not entitled to relief under Rule 56 based on its lack of standing argument.

**D.** **Plaintiff's Claims arising out of the defective foreclosure by advertisement – Counts II through V – should not be disposed of via Rule 56 where Defendant failed to follow the statutory notice requirements**

In the case before this Court, the Defendant has failed to comply with the Michigan Foreclosure by Advertisement Statute. It is undisputed that a prerequisite for circumventing

judicial foreclosure is the posting of notice on the subject domicile. Plaintiff denies any such posting. It is respectfully submitted that, at a minimum, a material question of fact exists as to whether or not the posting actually occurred.

Four counts in the Plaintiff's complaint arise out of this failure to properly post notice. Plaintiff addresses each separately.

### 1.    Declarative relief

Plaintiff's claim for declaratory relief is valid and should be adjudicated by this Court. Both the Declaratory Judgment Act and the Federal Rules of Civil Procedure support the inclusion of a request for declaratory relief in conjunction with other claims for relief.

Fed.R.Civ.P. 57 provides, "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Likewise, the Declaratory Judgment Act provides that when an "actual controversy" exists, a federal court may declare the rights and other legal relations of any interested party. 28 U.S.C. §2201. To seek declaratory judgment, the plaintiffs claim must be ripe. The Doctrine of Ripeness requires (i) a sufficiently concrete case or controversy within the meaning of Article III of the Constitution and (ii) prudential considerations must justify the present exercise of judicial power. *Christopher Lake Dey. Co. y St. Louis County*, 35 F3d 1269, 1272 (8th Cir 1994). Satisfaction of the actual controversy requirement of the Declaratory Judgment Act is shown where there exists a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Caldwell v Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir 1985). Here, there is a live dispute concerning whether the foreclosure by Defendant was authorized and conducted in accordance with Michigan law and whether Defendant acted in bad faith in its transactions and dealings with

-15-

Plaintiff. Plaintiff is entitled to declaratory relief declaring that the conduct of Defendants was not authorized by statute, was not performed in accordance with Michigan law, and was not in compliance with Defendants' duty of good faith and fair dealing constituting and breach of the parties' contract.

### 2.      Breach of Contract

The Defendants has breached its duty of good faith and fair dealing, a breach of the note and mortgage, which renders certain remedies - such as foreclosure - unavailable. A lender has a duty of good faith and fair dealing under the Uniform Commercial Code (as codified at M.C.L. §440.1203), and the *Restatement of Law 2d, Contracts*. The relevant statutes in Michigan are (1) MCL §440.1203 (§1-203 of the UCC) which provides that every contract falling within the UCC "imposes an obligation of good faith in its performance or enforcement," and (2) MCL §440.1201(19) (§1-201 of the UCC) which defines "good faith" as "honesty in fact in the conduct or transaction concerned." Courts in Michigan have recognized that banks are subject to the duty of good faith and fair dealing. See, e.g, *In re Red Cedar Construction Co.*, 63 BR 228 (Bankr, ED Mich, 1986). In the lender-borrower context, the implied covenant "would require that the bank be honest in its dealings with [Plaintiff] and that it not purposefully injure [their] right to obtain the benefit of the contract." *Ferris v. Fed Horne Loan Mortgage Corp.*, 905 F.Supp. 23, 28 (D.Mass.1995).

In the instant matter, failing to give proper notice of a sheriff's sale is breach of good faith. Further, taking $3,200.00 of the Plaintiff's money, failing to account for it and failing to adequately respond to Plaintiff's inquiry as to what happened to that money is also bad faith. Failing to properly report to the credit bureaus also qualifies as an act in bad faith.

-16-

Plaintiff's Complaint contains sufficient allegations that the Defendant has breached a duty of good faith and fair dealing. A genuine issue of material fact exists regarding notice and whether the Defendant adequately responded to the Qualified Written Request.

### 3. Wrongful Foreclosure

At the heart of her wrongful foreclosure claims is Ms. Lawyer's assertion that she did not receive the statutorily required notice. In the case before this Court, the Defendant has failed to comply with the Michigan Foreclosure by Advertisement Statute. While the Defendant claims to have posted the notice of foreclosure, Ms. Lawyer states that this never happened. It is respectfully submitted that, at a minimum, a material question of fact exists as to whether or not the posting actually occurred.

### 4. Violations of M.C.L. § 445.1651

Defendant would have the Court believe that there is no mechanism under Michigan law for addressing an unfair and defective foreclosure against a lender. That cannot be the law. To the extent that courts have held that mortgage loan transactions are exempt from the Michigan Consumer Protection Act, Plaintiff respectfully contends that such decisions should not be construed to extend to fraudulent, unfair and deceptive practices in connection with a foreclosure proceeding. Moreover, fraudulent, unfair and deceptive practices in connection with the servicing of a mortgage loan are specifically actionable under the Mortgage Brokers, Lenders and Servicers Act ("MBLSA"). The MBLSA is an act "to define and regulate mortgage brokers, mortgage lenders and mortgage servicers." M.C.L. §445.1651. Under the MBLSA, all mortgage brokers, lenders and servicers are required to be properly licensed or registered, and are subject to the requirements of the act. Section 1672 of the MBLSA provides that it is a violation of the act for any licensee or registrant to, among

-17-

other things:

> (a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.
> (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.
> (c) Intentionally or due to gross or wanton negligence, repeatedly fail to provide borrowers material disclosures of information as required by law.

M.C.L. § 445.1672.

Remedies for such violations include a declaratory judgment, injunction and damages including reasonable attorney fees and costs. M.C.L. § 445.1681(1). Accordingly, Plaintiff has standing to bring an action under the MBLSA for declaratory or injunctive relief from an act or practice that violates the MBLSA, or for damages. Plaintiff's Complaint contains sufficient allegations to state a cause of action under the MBLSA.

### E.    **The Plaintiff agrees to dismiss her tort claims and her Consumer Protection Act claims**

Plaintiff agrees to dismiss Counts VII through XI and her Consumer Protection Act claims.

## V.    CONCLUSION

For reasons set forth herein, the Defendant is not entitled to relief under Rule 56 as to Plaintiff's claims under the R.E.S.P.A. or the F.C.R.A. Further, Plaintiff' claims which arise out of the Defendant's failure to post notice should also survive. Plaintiff has, at very least, shown that genuine issues of material fact exist such that summary judgment is not appropriate as to these counts.

-18-

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    <u>s/ Adam G. Taub</u>
        Adam G. Taub (P48703)
        Attorney for Plaintiff
        17200 West 10 Mile Rd. Suite 200
        Southfield, MI 48075
        (248) 746-3790
        adamgtaub@clgplc.net

Dated:  March 19, 2012

**<u>Certificate of Service</u>**

My name is Adam G. Taub and I am an officer of this Court.  On March 19, 2012, I served

all parties entitled to notice with the foregoing document by ECF filing to each record address.


Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    <u>s/ Adam G. Taub</u>
        Adam G. Taub (P48703)
        Attorney for Plaintiff
        17200 West 10 Mile Rd. Suite 200
        Southfield, MI 48075
        (248) 746-3790
        adamgtaub@clgplc.net


Dated:  March 19, 2012